UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEPHANIE MASTRO, an individual,

    Plaintiff,

v.                                                         Case No:  2:12-cv-411-FtM-38UAM

SEMINOLE TRIBE OF FLORIDA
d/b/a SEMINOLE INDIAN CASINO –
IMMOKALEE, a Florida limited liability
company,

    Defendant.
_____/

## ORDER

This matter comes before the Court on the Motion of Seminole Tribe of Florida to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim for Relief and Memorandum of Supporting Points and Authorities ("Motion to Dismiss") (Doc. #28), filed on January 30, 2013 and Plaintiff's response (Doc. #32), filed on March 15, 2013.  For the reasons set forth below, Defendant's Motion to Dismiss is granted.

### BACKGROUND

Defendant, Seminole Tribe of Florida ("Tribe") is a federally recognized Native American tribe organized under Section 16 of the Indian Reorganization Act of 1934 ("Act"), as amended, 25 U.S.C. § 476, and doing business as Seminole Indian Casino ("Casino").  (Doc. #28, p. 2).  Plaintiff, Stephanie Mastro ("Mastro") was hired by the Casino on or about November 2008 as a card dealer.  (Doc. #20, p. 2).  The Casino is wholly owned and operated by the Tribe on restricted tribal trust land in reservation status within the geographical confines of Collier County, Florida.  (Doc. #28, p. 2).  The Casino was formed pursuant to the Indian Gaming Regulatory Act of 1988 ("IGRA"), 25

U.S.C. § 2701, *et seq.*  Id.  Mastro accuses Defendant of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992 ("FCRA").  Defendant moves to dismiss, arguing that tribal sovereign immunity prohibits this Court from exercising jurisdiction over Plaintiff's claims.  Plaintiff responds that under Title VII, Defendant is not cloaked with immunity, the Casino is a separate and distinct entity not subject to tribal immunity, and that even if sovereign immunity applies, Defendant has unequivocally waived its right to invoke its protections.

## LEGAL STANDARD

Tribal sovereign immunity concerns the Court's subject matter jurisdiction to hear an action.  See Taylor v. Alabama Intertribal Council, Title IV J.T.P.A., 261 F.3d 1032, 1034 (11th Cir. 2001); Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998).  Dismissal on tribal immunity grounds may be raised in a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1).  Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms: facial attacks and factual attacks.  "A 'facial attack' on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (internal quotation marks and citation omitted).  In contrast, "a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."  Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232-33 (11th Cir. 2008).  During a factual attack, the defendant challenges the

2

accuracy of the allegations, not their sufficiency. Norkunas v. Seahorse NB, LLC, 720 F. Supp. 2d 1313, 1314 (M.D. Fla. 2010), aff'd, 444 F. App'x 412 (11th Cir. 2011).

Here, Defendant has raised a factual attack on this Court's subject matter jurisdiction because its Motion to Dismiss is accompanied by attached exhibits. When evaluating a factual attack, the trial court is free to weigh the evidence in support of the jurisdictional claim even when material issues of fact exist. Morrison v. Amway Corp., 323 F.3d 920, 924-25 (11th Cir. 2004). A court also has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). E.F.W. v. St. Stephen's Indian High Sch., 264 F.3d 1297, 1302-03 (10th Cir. 2001). In these circumstances, a court's reference to evidence outside of the pleadings does not convert the motion into a Rule 56 motion.

## DISCUSSION

Defendant argues that tribal immunity divests the Court of subject matter jurisdiction because the Seminole Tribe of Florida is a federally recognized tribe immune from Plaintiff's statutory claims under Title VII and the Florida Civil Rights Act of 1992. "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." See, e.g., Kiowa, 523 U.S. at 754. Accordingly, the Court begins its analysis by examining the underlying federal statute to determine whether tribal immunity applies.

**A. Has Congress Abrogated Sovereign Immunity to Permit a Non-Tribal Plaintiff to File a Title VII Suit Concerning a Tribe's Economic Activities?**

The Supreme Court has recognized that while Native American sovereignty is not absolute, federal encroachment upon this immunity is a serious undertaking. Florida Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Florida, 166 F.3d 1126,

1130 (11th Cir. 1999). For this reason, we cannot presume that Congress intended to abrogate sovereign immunity unless statutory language makes its intent "unmistakably clear." Florida v. Seminole Tribe of Florida, 181 F.3d 1237, 1242 (11th Cir. 1999). Thus, "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 766 (1985). Plaintiff argues that under Title VII, tribal immunity does not apply where, as here, a non-tribal plaintiff's suit involves a tribe's business ventures. This Court disagrees.

Courts have consistently held that "Congress did not abrogate tribal immunity with regard to Title VII." Nanomantube v. Kickapoo Tribe in Kansas, 631 F.3d 1150, 1152 (10th Cir. 2011); see also Dawavendewa v. Salt River Project Agr. Imp. and Power Dist., 276 F.3d 1150, 1159 (9th Cir. 2002). In fact, rather than expressing an "unmistakably clear" intent to limit tribal immunity, Title VII specifically excludes "Indian tribe[s]" from the definition of "employer". See 42 U.S.C. 2000e(b). By doing so, Congress has unequivocally expressed that Native American tribes are not subject to Title VII's mandates. See Taylor, 261 F.3d at 1034. No part of the statute evinces a clear intent to waive tribal immunity in any circumstance.

Plaintiff directs this Court to Senator Karl Mundt's remarks as he introduced the amendment exempting Indian tribes from the definition of employer in Title VII:

> This amendment would provide to American Indian tribes in their capacity as a political entity, the same privileges accorded to the U.S. Government and its political subdivisions, to conduct their own affairs and economic activities without consideration of the provisions of the bill.

110 Cong. Rec. 1302 (1964). According to Plaintiff, Senator Mundt's comments demonstrate that Title VII was not intended to deny non-Native American employees the

4

right to sue. However, Plaintiff's argument conflates sovereign immunity with whether Defendant is subject to Title VII. As the Supreme Court has made clear, the application of a law to a tribe is not the same as whether a tribe enjoys immunity from suit. Kiowa, 523 U.S. at 755. In other words, "[t]here is a difference between the right to demand compliance with state laws and the means available to enforce them." Id.; see also Florida Paraplegic, 166 F.3d at 1130 ("[W]hether an Indian tribe is subject to a statute and whether the tribe may be sued for violating the statute are two entirely different questions."). Plaintiff's arguments concern whether the tribe is subject to and should be deemed an "employer" under Title VII. That is whether there is a right to demand Defendant's compliance with the statute. That determination is wholly separate from whether the tribe may be sued under the statute and whether Defendant may raise the sovereign immunity defense. See Johnson v. Choctaw Mgmt./Serv. Enter., 149 F. App'x 800, 802 (10th Cir. 2005) ("Johnson's argument conflates the doctrine of tribal immunity and Title VII's express exemption of Indian tribes from its coverage"); Bales v. Chicasaw Nation Indus., 606 F. Supp. 2d 1299, 1307-08 (D.N.M. 2009) (concluding that Plaintiff's reference to Senator Mundt's remarks are not relevant to the sovereign immunity argument). Moreover, it is well established that congressional abrogation must come from "the definitive language of the statute itself" and that "legislative history and inferences from general statutory language are insufficient." Furry v. Miccosukee Tribe of Indians of Florida, 685 F.3d 1224, 1233 (11th Cir. 2012).

Notwithstanding the text of Title VII, Plaintiff argues that there is an emergence of courts that have refused to bar lawsuits brought by non-tribal plaintiffs against tribal commercial enterprises. There are two parts to Plaintiff's argument: first, tribal immunity

may not be invoked when a non-Native American plaintiff brings suit; second, immunity does not apply when a claim concerns a tribe's commercial activities.

In Kiowa, the United States Supreme Court implicitly rejected the first argument and expressly rejected the second. 523 U.S. at 759. Kiowa, involved a tribe which defaulted on a promissory note to Manufacturing Technologies totaling $285,000 plus interest. Id. at 753-54. Manufacturing Technologies sued in state court to recover the promised amount and the tribe moved to dismiss for lack of jurisdiction, relying in part on sovereign immunity. Id. at 754. The Supreme Court held that the tribe was cloaked in immunity regardless of whether the tribe's actions "involve[d] governmental or commercial activities and whether they were made on or off a reservation." Id. at 760. Notably, the Court took no issue with plaintiff's status as a corporation. It is true that in Kiowa, the Court expressed misgivings about extending sovereign immunity to a tribe's commercial enterprise, particularly where immunity can harm those unaware of their interactions with a tribe or of their inability to seek recourse from a tort committed during a tribe's business operations. Id. at 758. Nevertheless, the Supreme Court declined to restrict the immunity doctrine and deferred to Congress to take the lead in "drawing the bounds of tribal immunity." Id. at 759; see also Furry, 685 F.3d at 1129 (following Kiowa despite sharing the Supreme Court's concerns about the broad scope of tribal immunity); Taylor, 261 F.3d at 1036-37 (finding that a tribe is immune from a discrimination suit brought by a non-Native American former employee); Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians, 563 F.3d 1205, 1210 (11th Cir. 2009) (concluding that tribal immunity bars a suit brought by the local water authority); Bales v. Chickasaw Nation Indus., 606 F. Supp. 2d 1299, 1305 (D.N.M. 2009) (rejecting

plaintiff's argument that tribal sovereign immunity does not extend to claims by non-Native Americans relating to a tribe's business ventures).

Plaintiff's arguments to the contrary rely on two cases decided prior to Kiowa. First, in Donovan v. Coeur d'Alene Tribal Farm, 751 F.2d 1113, 1116 (9th Cir. 1985), the Ninth Circuit was tasked with determining whether the Occupational Safety and Health Act ("OSHA"), a statute of general applicability, applied to the Coeur d'Alene tribal farm, a commercial venture owned by the Coeur d'Alene Tribe, which employed non-Native Americans and sold produce outside of tribal lands.  The specific issue on appeal was whether OSHA, silent as to its application to Native American tribes, reflected an implied expression of congressional intent to exclude tribal enterprises from the scope of the act.  Id. at 1115.  In concluding that OSHA applied to the tribal farm, the court relied on FPC v. Tuscarora Indian Nation, 362 U.S. 99 (1960), for the principle that "general acts of Congress apply to Indians as well as to all others in the absence of a clear expression to the contrary . . ." unless "(1) the law touches 'exclusive rights of self-governance in purely intramural matters'; (2) the application of the law to the tribe would 'abrogate rights guaranteed by Indian treaties'; or (3) there is proof 'by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations . . . .'" Donovan, 751 F.2d at 1116.

However, Donovan and Tuscarora concern the application of broad statutes to Native American tribes, not whether there is an abrogation of tribal immunity in claims arising from a tribe's commercial activities.  As explained earlier, there is a difference between whether sovereign immunity applies and whether an entity is subject to a suit. See, e.g., Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282, 1292 (11th Cir. 2001)

7

(declining to consider Tuscarora because "[t]he bare proposition that broad general statutes have application to Native American tribes does not squarely resolve whether there was an abrogation of tribal immunity . . . ."). For this reason, neither Donovan nor Tuscarora support Plaintiff's arguments.

Myrick v. Devils Lake Sioux Mfg. Corp., 718 F. Supp. 753, 754 (D.N.D. 1989) is equally unavailing. There, the court determined whether to decline jurisdiction over a dispute involving the activities of non-Indians or Indians arising on Indian reservations if plaintiff had failed to first exhaust tribal court remedies. Id. Myrick did not address the issue presented here – whether sovereign immunity extends to a suit brought by a non-Indian plaintiff against a tribal commercial enterprise. See also Bales, 606 F. Supp. 2d at 1303 (concluding that Myrick is not relevant to resolving whether a nontribal plaintiff may sue under Title VII and the ADEA).

In sum, Plaintiff provides no support for declining to extend sovereign immunity to the Seminole Tribe of Florida.

**B. Whether Sovereign Immunity Applies to the Seminole Indian Casino**

Next, Plaintiff argues that as a subordinate arm of the tribe, the Seminole Indian Casino is not cloaked with immunity. Plaintiff maintains that an extension of immunity to the Casino, a multi-billion dollar industry, defies Congressional intent of protecting "financially fragile" Native American tribes. Plaintiff insists that many employees of casinos and other tribal businesses are unaware that they are forfeiting their rights to bring employment-related suits. In support, Plaintiff cites to the dicta of several district court and circuit court opinions asserting their reluctance to extending immunity to a corporate arm of a tribe.

Plaintiff's policy arguments are not without merit but are contravened by well-established precedent. The settled law in this and other circuits is that subordinate arms of Native American tribes are immune from suit. Taylor, 261 F.3d at 1036 (applying sovereign immunity to an intertribal council); Cash Advance and Preferred Cash Loans v. State, 242 P.3d 1099, 1109 (Colo. 2010) ("Recognizing that Congress has not imposed any limitation on the application of tribal sovereign immunity to entities acting as arms of a tribe, all the federal courts of appeals that have addressed this issue have held that such entities are entitled to immunity.").

Furthermore, and as is relevant here, Congress has specifically promoted tribal sovereignty through the authorization of Indian gaming. See 25 U.S.C. § 2702(1) (noting that the Indian Gaming Regulatory Act is designed to "provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments"). Courts have, in turn, extended a tribe's immunity to a variety of casinos, noting, for example, that the "[i]mmunity of the Casino directly protects the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general." Allen v. Gold Country Casino, 464 F.3d 1044, 1047 (9th Cir. 2006); see also Frazier v. Turning Stone Casino, 254 F. Supp. 2d 295, 305 (N.D.N.Y. 2003) (holding that the tribe-operated casino was protected by tribal immunity); World Touch Gaming, Inc. v. Massena Mgmt., LLC, 117 F. Supp. 2d 271, 274-76 (N.D.N.Y. 2000) (same).

Plaintiff responds that not all tribal arms are subject to immunity and cites in support Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173 (10th Cir. 2010). There, the Tenth Circuit took a qualified view of tribal immunity,

9

which, it held, may extend to a tribal arm "provided that the relationship between the tribe and the entity is sufficiently close to permit the entity to share in the tribe's immunity." Id. at 1183. In order to make this determination, the Fifth Circuit set forth a five factor test to examine the nexus between the tribe and the economic entity. Id. at 1185. And while other jurisdictions have developed their own factors, see, e.g., Gavle v. Little Six, Inc., 555 N.W. 2d 284, 294 (Minn. 1996); Wright v. Prairie Chicken, 1998 S.D. 46, 579 N.W. 2d 7 (1998); Runyon ex rel. B.R. v. Ass'n of Village Council Presidents, 84 P.3d 437, 440 (Alaska 2004), the Eleventh Circuit has not yet adopted this analysis.[1]

Regardless, the Court finds that under the facts of this case, it need not examine the Breakthrough factors to conclude that the Seminole Indian Casino is immune from suit. Defendant notes that the Casino is wholly owned and operated by the tribe and was formed pursuant to the Indian Gaming Regulatory Act. (Doc. # 28, p. 2). And as the Ninth Circuit explained in nearly identical circumstances, a casino formed under the IGRA "is no ordinary business." Allen, 464 F.3d at 1046. The IGRA requires a tribe to authorize the casino through a tribal ordinance and an interstate gaming compact. 25 U.S.C. § 2710(d)(1). As a result, "the casino's gaming activities are permitted only under the auspices of the tribe." Allen, 464 F.3d at 1046. One of the primary purposes

---

[1] In fact, Plaintiff fails to cite to and this Court is unaware of a single instance where either the Eleventh Circuit or a Florida court declined to extend sovereign immunity to a subordinate arm of a tribe. On the contrary, just last year, the Eleventh Circuit made clear that even though it was sympathetic to many of the policy arguments made by Plaintiff – namely that the reasons for extending immunity to tribal economic enterprises like casinos are outdated – it was nevertheless compelled to follow "the Supreme Court's straightforward doctrinal statement, repeatedly reiterated in the holdings of this Circuit, that an Indian tribe is subject to suit in state or federal court 'only where Congress has authorized the suit or the tribe has waived its immunity." Furry, 685 F.3d at 1236 (emphasis in original).

of the IGRA is "to insure that the Indian tribe is the primary beneficiary of the gaming operation." 25 U.S.C. § 2702(2). Because the tribe exclusively owns and operates the Casino, it is clear that the Casino's economic advantages flow directly to the tribe. As a result, there is no question that the Casino and the Tribe share a sufficient nexus to warrant an extension of immunity. See Allen, 464 F.3d at 1046-47 ("In light of the purposes for which the Tribe founded this Casino and the Tribe's ownership and control of its operations, there can be little doubt that the Casino functions as an arm of the Tribe."). For these reasons, the Court finds that the Casino is immune from suit.

### C. Whether Defendant Waived Tribal Immunity

A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978). While a contractual waiver of sovereign immunity must be unequivocal, it need not contain "'magic words' stating that the tribe hereby waives its sovereign immunity." Rosebud Sioux Tribe v. Val-U Const. Co. of S.D., Inc., 50 F.3d 560, 563 (8th Cir. 1995). Plaintiff argues that the Tribe waived its sovereign immunity by entering into a Gaming Compact with the State of Florida, which provides that the Tribe will "comply with all federal and state labor laws . . . ." (Doc. #32, p. 18).[2]

Once again, Plaintiff has confused whether the tribe is subject to a law and whether the tribe may be sued for violating the law. The Eleventh Circuit's decisions in Sanderlin and Furry are instructive. In Sanderlin, the Eleventh Circuit rejected the employee's argument that the Seminole Tribe waived its immunity under the Rehabilitation Act by accepting federal funds under contracts that included a promise to

---

[2] Section 285.711 of the Florida Statutes, codified the compact but was repealed on April 28, 2010.

11

comply with the Rehabilitation Act. 243 F.3d at 1287-88. The circuit court held that the tribe's promise to comply with the Rehabilitation Act amounted to a promise to not discriminate and that it "in no way constitute[d] an express and unequivocal waiver of sovereign immunity." Id. at 1289.

And in Furry, the Eleventh Circuit refused to equate plaintiff's contractual obligation to comply with a Florida dram shop statute with an unequivocal waiver of tribal immunity. 685 F.3d at 1235. The court reasoned that at most, the contract requires the tribe to acquiesce to the authority of state regulators by allowing law enforcement to inspect and search its premises for violations of Florida liquor laws. Id. That obligation in no way constitutes an express waiver. Id. See also Costello v. Seminole Tribe of Florida, 763 F. Supp. 2d 1295, 1299 (M.D. Fla. 2010) ("By bargaining for the Tribe's promise to comply with applicable law, Florida perhaps achieves a contractual right to declare the Tribe in violation of the compact for failing to comply with applicable labor law, but neither Florida nor the plaintiff acquires the right to sue in federal court to remedy a violation of the FLSA.").

Contrary to Plaintiff's assertion, this case is distinguishable from C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 532 U.S. 411, 414 (2001), where the Supreme Court held that the tribe waived its immunity by agreeing to arbitrate disputes and to enforce "arbitral awards 'in any court having jurisdiction thereof.'" As the Supreme Court explained, a consent to arbitrate a dispute and to be subject to an arbitral award necessarily "authorizes judicial enforcement of the resolution arrived at through arbitration." Id. at 422. The arbitration clause would be meaningless without the parties' waiver of immunity. Id. In contrast, Plaintiff points to no provision of the

12

Gaming Contract with the State of Florida, which mentions her right to sue, her consent to any form of judicial enforcement, or an express waiver of tribal immunity. And while it may be troubling for a party to agree to be subject to a statute, but not to its judicial enforcement, it is not unprecedented. See Florida Paraplegic, 166 F.3d at 1134 ("Thus, the Supreme Court recognized that Congress could enact a statute with substantive limitations on Indian tribes without providing any means for most individuals protected by the law to enforce their rights in federal court.").

For these reasons, this Court concludes that Defendant has not waived its sovereign immunity.[3]

Accordingly, it is hereby **ORDERED**:

(1) The Motion of Seminole Tribe of Florida to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim for Relief and Memorandum of Supporting Points and Authorities (Doc. #28) is **GRANTED**.

(2) The case is **DISMISSED WITHOUT PREJUDICE**.

(3) The Clerk of the Court shall enter judgment accordingly, terminate any pending matters, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 27th day of June, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

---

[3]Because the Court finds that the record is sufficient to warrant a dismissal of Plaintiff's claims, Plaintiff's alternative request to conduct jurisdictional discovery is denied.